1  Nathaniel Durrance (SBN: 229210)
2  nate@newmanlaw.com
   Newman LLP
3  100 Wilshire Blvd., Suite 700
   Santa Monica, CA 90401
4  Telephone: (310) 359-8200
   Facsimile: (310) 359-8190
5
6  Counsel for Defendant
   Aspyr Media, Inc.
7

8           **UNITED STATES DISTRICT COURT**
9           **CENTRAL DISTRICT OF CALIFORNIA**

10  MALACHI MICKELONIS, individually and        Case No. 8:23-cv-01220-FWS-ADS
    on behalf of all others similarly situated,
11                                               **DEFENDANT ASPYR MEDIA, INC.'S**
                  Plaintiff,                     **NOTICE OF MOTION AND MOTION**
12                                               **FOR SANCTIONS UNDER RULE 11**
13          v.
                                                 Judge Fred W. Slaughter
14  ASPYR MEDIA, INC. and DOES 1-5,
                                                 Hearing Date: November 9, 2023
15                Defendants.

16  _____

17          PLEASE TAKE NOTICE that on November 9, 2023 at 10:00 a.m., or as soon
18
    thereafter as counsel may be heard by the above-entitled court located at the
19
    Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St.,
20
    Santa Ana, CA 92701, Courtroom 6B, 6th Floor, Defendant Aspyr Media, Inc. will
21
    and hereby do, move for an order under Rule 11(c) of the Federal Rules of Civil
22
    Procedure granting sanctions in the form of attorneys' fees on the following
23
    grounds: Counsel for Plaintiff filed a putative class-action with actual knowledge,
24
    or without conducting reasonable inquiry, that the Plaintiff does not have
25
    standing and that the complaint falsely states common questions of fact and law.
26
            This motion is based upon this Notice of Motion and the Memorandum of
27
    Law in Support of Motions for Sanctions Under Rule 11 filed herewith; the
28

Declaration of Keith Scully and attachments thereto; the Declaration of Chris Bashaar and attachments thereto; any facts, documents, or matters for which judicial notice is proper; any other or further papers filed or arguments made in support of the motion; as well as any oral argument presented at the time of the hearing.

Aspyr Media, Inc. certifies that prior to filing this motion, it served this Motion on Plaintiff's counsel 21 days before filing this motion with the court on September 13, 2023, giving Plaintiff the opportunity to challenge or appropriately correct the conduct described herein, in accordance with Fed. R. Civ. P. 11(c)(2).

Additionally, Aspyr Media, Inc. certifies that prior to filing this motion, it conferred with counsel for Plaintiff under L.R. 7-3 in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. The conference of counsel took place on September 6, 2023.

Dated: October 10, 2023                     Respectfully submitted,

Newman LLP


/s/ Nathaniel Durrance
Nathaniel Durrance (SBN: 229210)
nate@newmanlaw.com
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Telephone: (310) 359-8200
Facsimile: (310) 359-8190

Counsel for Defendant
Aspyr Media, Inc.

DEFENDANT ASPYR MEDIA, INC.'S NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS

Nathaniel Durrance (SBN: 229210)
*nate@newmanlaw.com*
Newman LLP
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Telephone: (310) 359-8200
Facsimile: (310) 359-8190

Counsel for Defendant
Aspyr Media, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MALACHI MICKELONIS, individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　v.<br><br>ASPYR MEDIA, INC. and DOES 1-5,<br><br>　　　Defendants. | Case No. 8:23-cv-01220-FWS-ADS<br><br>**DEFENDANT ASPYR MEDIA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS UNDER RULE 11**<br><br>The Honorable Fred W. Slaughter<br><br>Hearing Date: November 9, 2023 |

DEFENDANT ASPYR MEDIA, INC.'S MEMO RE MOT. FOR SANCTIONS UNDER RULE 11

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. 1

TABLE OF AUTHORITIES ........................................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES.................................................. 4

FACTUAL BACKGROUND ........................................................................................ 4

    A.   Mickelonis brought a class-action lawsuit alleging that he failed to get a refund when he was disappointed that he did not receive video-game bonus content. ................................................................... 4

    B.   In truth, Mickelonis was offered and accepted a rebate token worth more than the game he bought. ................................................ 5

    C.   Mickelonis created false common questions of law unsupported even by the facts in his complaint. ............................................................ 6

    D.   Counsel was advised of the false allegations in the complaint and that Mickelonis did not have standing and failed to dismiss................. 7

ARGUMENT .................................................................................................................. 7

    A.   A reasonable and competent inquiry would have revealed that Mickelonis does not have standing because he requested and accepted a rebate. ................................................................................ 8

    B.   The complaint falsely asserts there are common questions of fact and law. ..................................................................................... 11

    C.   The Court should award attorney's fees............................................. 12

CONCLUSION............................................................................................................. 13

1

<b>TABLE OF AUTHORITIES</b>

2

**Cases**

3

*Albright v. Upjohn Co.*,

4
   788 F.2d 1217 (6th Cir. 1986)............................................................. 12

5

*Demmler*,
   No. 1:15-cv-13556-LTS,

6
   2016 U.S. Dist. LEXIS 123540 ........................................................... 10

7

8
*Doe v. Obama*,
   631 F.3d 157 (4th Cir. 2011).................................................................. 9

9

10
*Epstein v. JPMorgan Chase & Co.*,
   2014 U.S. Dist. LEXIS 38628 (S.D.N.Y. Mar. 21, 2014) ...................... 10

11

12
*Estate of Blue v. Cnty. of L.A.*,
   120 F.3d 982 (9th Cir. 1997).................................................................. 7

13

14
*Fensterer v. Capital One Bank (USA), N.A.*,
   No. 20-5558(RMB/KMW),

15
   2021 U.S. Dist. LEXIS 41520 (D.N.J. Mar. 5, 2021).............................. 9

16

17
*Greenberg v. Sala*,
   822 F.2d 882 (9th Cir. 1987).................................................................. 7

18

19
*Himaka v. Buddhist Churches of Am.*,
   917 F. Supp. 698 (N.D. Cal. 1995)......................................................... 8

20

21
*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005).................................................................. 8

22

23
*In re Keegan Mgmt. Co., Sec. Litig.*,
   78 F.3d 431 (9th Cir. 1996).................................................................... 8

24

25
*In re McNeil Consumer Healthcare*,
   877 F. Supp. 2d 254 (E.D. Pa. 2012) .................................................. 10

26

27
*Lepkowski*,
   No. 19-cv-04598-YGR,
   2019 U.S. Dist. LEXIS 214555 ........................................................... 10

28

*Luman v. Theismann,*
  Case No. 2:13cv656,
  2014 U.S. Dist. LEXIS 14038, 2014 WL 443960 (E.D. Cal. Feb. 4, 2014)............. 9

*Owino v. Corecivic, Inc.,*
  60 F.4th 437 (9th Cir. 2022.) ............................................................................... 11

*Spokeo, Inc. v. Robins,*
  578 U.S. 330, 136 S. Ct. 1540 (2016) ................................................................. 8, 9

*Stiglich v. Contra Costa County Bd. Of Supervisors,*
  1997 U.S. App. LEXIS 897 (9th Cir. 1997) ............................................................ 8

*Strugala v. Flagstar Bank, FSB,*
  No. 5:13-cv-05927-EJD,
  2017 U.S. Dist. LEXIS 142298 (N.D. Cal. Sep. 1, 2017) ....................................... 9

*Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.,*
  834 F.2d 833 (9th Cir. 1987).................................................................................. 8

*Unioil, Inc. v. E.F. Hutton & Co.,*
  809 F.2d 548 (9th Cir. 1986).................................................................................. 11

*Warth v. Seldin,*
  422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)......................................... 9

*Westmoreland v. CBS Inc.,*
  248 U.S. App. D.C. 255, 770 F.2d 1168 (D.C. Cir. 1985).................................... 12

*White v. Microsoft Corp.,*
  454 F. Supp. 2d 1118 (S.D. Ala. 2006) ................................................................. 9

*Zaldivar v. City of Los Angeles,*
  780 F.2d 823 (9th Cir. 1986)........................................................................... 8, 12

**Rules**

Fed. R. Civ. P. 11................................................................................................... 16

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2        Plaintiff Malachi Mickelonis brings a putative class action alleging that he is

3    the victim of false advertising because Aspyr Media claimed that it would release

4    bonus content for a video game and then didn't do so. Mickelonis' only alleged

5    harm is the money he spent on the game. But Mickelonis requested and accepted

6    a game token for a different game worth more than he spent.

7        This key omission from the complaint means Mickelonis does not have

8    standing and the complaint must be dismissed. Aspyr moved separately for that

9    relief and seeks an award of its attorney's fees under Rule 11 here.

10        The lack of standing is only the tip of the iceberg. Mickelonis' complaint

11    describes common questions of law that are unsupported even by the incomplete

12    and misleading facts Mickelonis alleges. A rudimentary investigation would have

13    revealed these failings and counsel has maintained this action despite actual

14    knowledge of its flaws. Sanctions in the form of Aspyr's attorney's fees should be

15    awarded.

16    **FACTUAL BACKGROUND**

17    **A.   Mickelonis brought a class-action lawsuit alleging that he failed to get a
     refund when he was disappointed that he did not receive video-game**

18    **bonus content.**

19        According to the allegations in his complaint, Mickelonis viewed a tweet

20    stating that a particular video game based on the *Star Wars* universe, abbreviated

21    "KOTOR," would potentially have an expansion set to be released later.

22    Mickelonis claimed that he only purchased the game based on these alleged

23    "advertisements," and that when the expansion was not released, he was

24    harmed. He specifically claimed that:

25            Despite their failure to release KOTOR's Restored Content DLC,

26            Defendants refused to give refunds to purchasers of KOTOR.

27        Complaint, ¶ 17. Mickelonis further claimed that:

28

> Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendants as a result of their intentional false advertising.

Complaint, ¶ 20. Mickelonis also argues that:

> Plaintiff and Class Members were undoubtedly injured and lost money as a result of Defendants' misleading, deceptive, fraudulent, and intentionally false advertising.

Complaint, ¶ 21. Setting aside whether any of these allegations are true, which they are not, the only monetary remedy Mickelonis requests is restitution, meaning the money he allegedly spent on the game. Complaint, Prayer for Relief, ¶ A.

**B.    In truth, Mickelonis was offered and accepted a rebate token worth more than the game he bought.**

Aspyr is a video-game developer that creates and markets video games on a variety of game platforms. (September 13, 2023 Declaration of Chris Bashaar ("Bashaar Decl.") at ¶ 2.) The KOTOR version Mickelonis complains about was offered on Nintendo's Switch platform. (Bashaar Decl. at ¶ 3.) On the Switch platform, consumers buy games produced by Nintendo or other game developers like Aspyr. *Id.* Games can be acquired either by buying them directly on the platform and paying Nintendo via a credit card or other payment mechanism, or through buying or otherwise acquiring game "tokens" from other locations. *Id.* A game token is a string of letters and numbers that, when entered into Nintendo's website, will unlock a particular game and allow the user to download it without making further payment. Tokens are unique and once released, Aspyr has no way to know if they are ever redeemed. *Id.*

Aspyr and Nintendo divide the revenue from each game sale. (Bashaar Decl. at ¶ 4.) When Nintendo sells a game, Nintendo remits a portion of the price to Aspyr. *Id.* And when Aspyr issues a game token, Aspyr has to pay Nintendo as soon as the token is created and given to a consumer. *Id.*

1   On November 22, 2022, Mickelonis paid $11.14 for a copy of KOTOR.

2   (Bashaar Decl. at ¶ 5, Att. A.) That game was fully functional and could be played

3   on the Switch system. (Bashaar Decl. at ¶ 6.) On June 2, 2023, Aspyr sent out a

4   tweet indicating that it was unfortunately unable to release any bonus content for

5   KOTOR on Nintendo's platform. (Bashaar Decl. at ¶ 7, Att. B.) The tweet further

6   offered consumers who had purchased KOTOR a game token for a variety of

7   different Star Wars games on the Switch platform. *Id.*

8   On June 3, 2023, Mickelonis requested and received a token to Star Wars:

9   Jedi Knight Jedi Academy, a game worth $19.99. (Bashaar Decl. at ¶ 8, Att. C.)

10   There are no communications indicating that Mickelonis requested a refund of his

11   purchase price or that there was anything defective about the version of KOTOR

12   he purchased. (Bashaar Decl. at ¶ 9.)  On July 8, 2023, Mickelonis filed his

13   complaint, claiming that he was the victim of false advertising because Aspyr

14   never released the bonus content.

**C.   Mickelonis created false common questions of law unsupported even by the facts in his complaint.**

16   Mickelonis claims that the Court should certify a class action based on

17   whether "Plaintiff and the Class Members purchased a game containing the same

18   intentionally misleading, deceptive, false and fraudulent representations" and

19   whether "Plaintiff and the Class members were damaged thereby, and the extent

20   of damages for such violation." Complaint, ¶ 26(b-c).

21   But Mickelonis does not allege that the game itself or any messages received

22   during the purchase of the game contained unlawful representations. Instead,

23   Mickelonis claims that "advertisements" contained "false promises." Complaint,

24   ¶¶ 11-12. In reality, all he points to is a single website and a couple tweets, all

25   separate from the purchase, download or play of the game. And he fails to inform

26   the Court that damages could vary tremendously between claimants, depending

27   on whether they took advantage of the refund or replacement token, invested in

28

hardware to play KOTOR, derived value from it despite the lack of the bonus software, and a variety of other factors.

**D.    Counsel was advised of the false allegations in the complaint and that Mickelonis did not have standing and failed to dismiss.**

On September 6, 2023, counsel for Defendants met with Mickelonis' counsel via Zoom and discussed the flaws in the complaint. (October 9, 2023 Declaration of Keith Scully ("Scully Decl.") at ¶ 3.) Before that meeting, Defendants sent Mickelonis' counsel the supporting information demonstrating that Mickelonis had received a game token. (Scully Decl. at ¶ 4, Att. A.)

During the meeting, Mickelonis' counsel said that because Mickelonis never redeemed the game token he requested and received, Mickelonis still had standing. (Scully Decl. at ¶ 6.) Citing inapposite law, he claimed that offering an unsolicited rebate was not sufficient to meet Rule 68's standards, ignoring that Mickelonis requested, accepted and received the rebate and that Rule 68 did not apply. (Scully Decl. at ¶ 7.)

On September 13, 2023, Defendants served this motion. (Scully Decl at ¶ 8.)

**ARGUMENT**

Rule 11 sanctions are appropriate "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cnty. of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997) (citation omitted). The Ninth Circuit has identified two circumstances where Rule 11 sanctions may be imposed: where a litigant makes a "frivolous filing," that is where he files a pleading or other paper which no competent attorney could believe was well-grounded in fact and warranted by law, and where a litigant files a pleading or paper for an "improper purpose," such as personal or economic harassment. *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987).

A frivolous filing is one that is "both baseless and made without a reasonable and competent inquiry." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th

Cir. 1996). This Court must conduct a two-prong inquiry to determine whether the complaint is frivolous:  "(1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). The burden is on the moving party to demonstrate why sanctions are justified. *Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987).

In other words, Rule 11 sanctions are appropriate if the factual contentions lack evidentiary support. *Stiglich v. Contra Costa County Bd. Of Supervisors*, 1997 U.S. App. LEXIS 897 (9th Cir. 1997).  A claim is only "well-grounded in fact if an independent examination reveals some credible evidence in support of a party's statements." *Himaka v. Buddhist Churches of Am.*, 917 F. Supp. 698, 710 (N.D. Cal. 1995).  While the Court generally considers what facts were known by the plaintiff at the time of suit, the court must also consider after-acquired factual evidence if it alters the basis for the claims. *Keegan*, 78 F.3d at 434. A violation of rule 11 need not be premised on a finding of subjective bad faith. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986).

**A.    A reasonable and competent inquiry would have revealed that Mickelonis does not have standing because he requested and accepted a rebate.**

Standing consists of three elements—a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016). To establish an injury in fact, a plaintiff must show that he or she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist," and requires more than "a bare procedural violation." *Id.* at 1548–1549. Thus, plaintiffs must plead a

1  concrete loss in addition to an injury in fact—or risk dismissal for lack of standing.

2     A plaintiff cannot attain standing by pleading injury to other class members

3  or the class as a whole. *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011). In other

4  words, if a named plaintiff in a purported class action cannot establish standing,

5  she cannot "seek relief on behalf of [herself] or any other member of the

6  class." *Warth v. Seldin*, 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

7     The only monetary relief Mickelonis seeks is restitution, meaning the money

8  he spent on the game. (Complaint, Prayer for Relief, ¶ A.) But Mickelonis asked

9  for and received a game token worth more than the value of the KOTOR game. A

10 plaintiff's acceptance of a refund deprives the plaintiff of standing. *See e.g.*,

11 *Strugala v. Flagstar Bank, FSB,* No. 5:13-cv-05927-EJD, 2017 U.S. Dist. LEXIS

12 142298, at *5 (N.D. Cal. Sep. 1, 2017) ("Strugala has received compensation for

13 her inability to receive a 2012 refund stemming from Flagstar's erroneous Form

14 1098 report in 2012. Accordingly, the Court finds that Strugala lacks Article III

15 standing to pursue claims based on this injury."); *Luman v. Theismann*, Case No.

16 2:13cv656, 2014 U.S. Dist. LEXIS 14038, at *2, 2014 WL 443960 (E.D. Cal. Feb. 4,

17 2014) (dismissing for lack of standing where, two months before the plaintiffs

18 filed suit, the defendant issued a plaintiff a refund for the cost of his orders, which

19 included the purchase price and shipping costs); *Fensterer v. Capital One Bank*

20 *(USA), N.A.*, No. 20-5558(RMB/KMW), 2021 U.S. Dist. LEXIS 41520, at *7-8 (D.N.J.

21 Mar. 5, 2021) ("Plaintiff no longer has a concrete interest in the outcome in this

22 case because she has received the very refund she was seeking."); *White v.*

23 *Microsoft Corp.*, 454 F. Supp. 2d 1118, 1128 (S.D. Ala. 2006) (ruling that a "limited

24 remedy provid[ing] for repair or replacement [of a defective Xbox 360] . . . or [a]

25 refund of the purchase price . . . would actually ensure that White received the

26 substantive value of his bargain, not deprive him of it").

27     A plaintiff similarly loses standing by accepting something else in lieu of a

28 refund. *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 275 (E.D. Pa.

1   2012). For example, in *McNeil,* plaintiffs were offered a variety of rebate choices,

2   including coupons for other products and the average retail price of the product

3   they purchased. The court rejected Plaintiffs' argument that they suffered an

4   injury in fact even though plaintiffs claimed they did not want a new product and

5   paid more than the average retail price for the products they bought.

6       Mickelonis asked for and accepted a replacement game worth more than the

7   KOTOR game he originally purchased. He retained the fully-functional KOTOR

8   game and only did not receive the bonus content.

9       Mickelonis' argument that because he never redeemed the game token he

10  has standing to sue fails. Unsurprisingly, some litigious plaintiffs refuse (or claim

11  to have refused) a refund in order to maintain standing. Courts "routinely" reject

12  arguments like one plaintiff's that "she did not accept [the defendant's] offer as

13  she has maintained both $20 and the replacement bottle in escrow." *Lepkowski*,

14  No. 19–cv-04598-YGR, 2019 U.S. Dist. LEXIS 214555, at *5–7; *see also Epstein v.*

15  *JPMorgan Chase & Co.*, 2014 U.S. Dist. LEXIS 38628, at *7 (S.D.N.Y. Mar. 21, 2014)

16  ("The Court cannot accept Plaintiff's contention that by neither requesting nor

17  cashing the Refund Check, he has somehow created standing. To do so would not

18  only render hollow the injury-in-fact requirement, but would also engender a

19  disincentive among potential litigants to attempt legitimately to resolve disputes

20  without judicial intervention."); *see also Demmler*, No. 1:15-cv-13556-LTS, at p. 8,

21  2016 U.S. Dist. LEXIS 123540 ("[Plaintiff's] refusal to accept the $75 is immaterial.

22  The question under Article III is whether a live case or controversy exists, and the

23  mere fact that [plaintiff] did not accept unconditionally-provided remediation

24  does not extend the life of the dispute."))

25      Mickelonis' sole argument for damages is that he lost the value he spent on

26  the original video game. He asked for and accepted a different game worth more.

27  He does not have standing. Holding otherwise would place companies in an

28  impossible position when circumstances change and they are not able to deliver a

1  product. Aspyr offered an alternate product and Mickelonis accepted it. Aspyr has
2  no way to know whether he used the token and was not obligated to affirmatively
3  offer everyone who purchased the game a refund simply because bonus content
4  was not available.

5    An attorney's failure to investigate a class-action plaintiff's ability to
6  represent the class is a basis for Rule 11 sanctions. *Unioil, Inc. v. E.F. Hutton & Co.*,
7  809 F.2d 548, 557, (9th Cir. 1986). In *Unioil*, the 9th Circuit affirmed $294,141.10
8  in Rule 11 sanctions against an attorney who failed to investigate whether the
9  plaintiff was an adequate class representative.

10    Counsel here knew that Aspyr had offered to provide replacement games
11  because counsel included Aspyr's tweet in the body of the complaint. Complaint,
12  ¶ 15. Like *Unioil*, counsel either knew that Mickelonis did not have standing or
13  failed to make reasonable inquiry by simply asking his client if he had taken
14  advantage of Aspyr's offer. Further, counsel certainly knew when Defendants told
15  him and asked him to dismiss the case.

16  **B. The complaint falsely asserts there are common questions of fact and law.**

17    In order to certify a class, the Court must find that the common questions
18  predominate over questions affecting only individual members and that a class
19  action is superior to other available methods for fairly and efficiently adjudicating
20  the controversy. *Owino v. Corecivic, Inc.*, 60 F.4th 437, 443 (9th Cir. 2022.) In
21  order to do so, the Court must be aware of the factual and legal basis for the
22  putative class action from the facts alleged in the complaint. Especially in a CAFA
23  action, where the only basis for jurisdiction is the potential for class litigation,
24  honesty in pleading is vital.

25    The complaint alleges that one of the common questions of fact and law is:

26     Whether Plaintiff and the Class Members purchased a game
27     containing the same intentionally misleading, deceptive, false and
   fraudulent representations.

28

1   Complaint, ¶ 26(b). But Mickelonis does not allege that the game itself

2   contained unlawful representations. Instead, Mickelonis claims that

3   "advertisements," separate from the game and seen on a website and in a tweet,

4   contained false promises. Complaint, ¶¶ 11-12. Accordingly, the question of fact

5   is whether each class member saw the alleged "advertisements," not whether

6   they all purchased the same game. That question must be individually determined

7   and Mickelonis' claim that a class-action is appropriate fails.

8   Likewise, Mickelonis claims that a common question of fact is "whether

9   Plaintiff and the Class members were damaged thereby, and the extent of

10   damages for such violation." Mickelonis fails to inform the Court that each

11   proposed class member would have damages ranging from zero to the cost of the

12   game, requiring a mini-trial for each class member. Some, like Mickelonis, have no

13   damages because they requested and received a game worth more than they

14   spent on KOTOR. Others have no damages because they never saw the alleged

15   "advertisements" and thus did not rely on them. Others could claim that they

16   accepted a replacement game worth less than what they spent on KOTOR, or that

17   there were no replacements they wanted, or that they invested money in

18   peripherals to play KOTOR and thus had higher damages.

19   **C.   The Court should award attorney's fees.**

20   When a court finds that an attorney has violated rule 11, it must impose

21   sanctions. *Zaldivar*, 780 F.2d at 831; *accord Albright v. Upjohn Co.*, 788 F.2d 1217,

22   1221-22 (6th Cir. 1986); *Westmoreland v. CBS Inc.*, 248 U.S. App. D.C. 255, 770

23   F.2d 1168, 1174-75 (D.C. Cir. 1985). Rule 11 authorizes a court to impose "an

24   appropriate sanction, which may include an order to pay to the other party or

25   parties the amount of the reasonable expenses incurred because of the filing of

26   the pleading, motion, or other paper, including a reasonable attorney's fee." Fed.

27   R. Civ. P. 11.

28   Here, the case should never have been filed. The only plaintiff does not have

1  standing. And it certainly should not have been filed as a class action; the

2  common questions of fact and law identified in the complaint are not common

3  questions at all and instead individual factual determinations are rife.

4      Aspyr has incurred attorney's fees in investigating the claims, meeting with

5  opposing counsel, and preparing this motion. Aspyr has incurred further fees

6  preparing a motion to dismiss and supporting documents, and requests leave to

7  file affidavits supporting the amount of those fees and briefing explaining why

8  they are reasonable.

9                              **CONCLUSION**

10      Mickelonis was disappointed in a video game and accepted a replacement

11  game worth more in value. Whether he told this key fact to his lawyer is unclear;

12  what is clear is that counsel had the ability to investigate and was later informed

13  of the true facts, presented with evidence proving them, and failed to dismiss.

14  Combined with the other frivolous claims identified herein, sanctions in the form

15  of Aspyr's attorney's fees are justified.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2   Dated: October 10, 2023            Respectfully submitted,

3                                      Newman LLP

4                                      /s/ Nathaniel Durrance
                                       Nathaniel Durrance (SBN: 229210)
5                                      nate@newmanlaw.com
6                                      100 Wilshire Blvd., Suite 700
                                       Santa Monica, CA 90401
7                                      Telephone: (310) 359-8200
8                                      Facsimile: (310) 359-8190

9
                                       Counsel for Defendant
10                                     Aspyr Media, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT ASPYR MEDIA, INC.'S MEMO RE MOT. FOR SANCTIONS UNDER RULE 11