Nathaniel Durrance (SBN: 229210)
nate@newmanlaw.com
Newman LLP
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Telephone: (310) 359-8200
Facsimile: (310) 359-8190

Counsel for Defendant
Aspyr Media, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALACHI MICKELONIS, JOSEPH ALFILANI, JACOB ALVA-MELVILLE, MICAIAH, FLORES, MATTHEW GORKA, JARED HILLIARD, CHARLES KIRK, DAVID KIRKLAND, YALE LIEBOWITZ, JACOB MUELLER, KEVIN MUNOZ, COLEBIE NIEDERMEIER, JOSHUA PALMER, BRYCE PHILLIPS, CHRISTOPHER SOUSA, ROLANDO VAZQUEZ, ADRIAN VILLA, and NICHOLAS YEE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ASPYR MEDIA, INC. and DOES 1-5,<br><br>Defendants. | Case No. 8:23-cv-01220-FWS-ADS<br><br>**DEFENDANT ASPYR MEDIA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND IN THE ALTERNATIVE MOTION TO STRIKE CLASS ACTION ALLEGATIONS AND DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>The Honorable Fred W. Slaughter<br><br>Hearing Date: January 18, 2023 |

1
DEFENDANT ASPYR MEDIA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on January 18, 2023 at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled court located at the Ronald Raegan Federal Building and United States Courthouse, 411 W. Fourth St., Courtroom 10D, Santa Ana, CA 92701, Defendant Aspyr Media, Inc. will and hereby does move for an order under Rule 12(b)(1) of the Federal Rules of Civil Procedure dismissing Plaintiff Malachi Mickelonis' First Amended FAC (ECF No. 23) without leave to amend on the following grounds: Plaintiffs do not have standing; in the alternative, dismissing the class-action allegations on grounds that there is no viable class action given the disparities in law between the proposed classes.

This motion is based upon this Notice of Motion and Motion to Dismiss and incorporated Memorandum of Points and Authorities; any facts, documents, or matters for which judicial notice is proper; any other or further papers filed or arguments made in support of the motion; as well as any oral argument presented at the time of the hearing.

Aspyr Media, Inc. certifies that prior to filing this motion, it conferred with counsel for Plaintiff under L.R. 7-3 in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. The conference of counsel took place on September 4, 2023, related to the first motion to dismiss. Aspyr attempted to confirm that counsel did not want to confer again on November 6, 2023. Counsel stated he was unavailable, and did not accept a phone call on November 7, 2023. Aspyr left a voicemail detailing the basis for the motion—that it is substantially the same as the original motion to dismiss—and a phone number for Mickelonis' counsel to call if he wished to confer further.

| | |
|---|---|
| Dated: November 8, 2023 | Respectfully submitted, |
| | Newman LLP |
| | |
| | /s/ Nathaniel Durrance |
| | Nathaniel Durrance (SBN: 229210) |
| | nate@newmanlaw.com |
| | 100 Wilshire Blvd., Suite 700 |
| | Santa Monica, CA 90401 |
| | Telephone: (310) 359-8200 |
| | Facsimile: (310) 359-8190 |
| | |
| | Counsel for Defendant |
| | Aspyr Media, Inc. |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 5

FACTUAL BACKGROUND ................................................................................ 5

    A.    Mickelonis brought a class-action lawsuit alleging that he failed to get a refund when he was disappointed that he did not receive video-game bonus content. .................................................................. 5

    B.    In truth, Mickelonis was offered and accepted a rebate token worth more than the game he bought. ............................................................ 6

    C.    The alleged false statements were displayed only on a few Tweets and on Aspyr's website for a short period of time. ................................. 8

    D.    Mickelonis added other plaintiffs from a variety of states and with a variety of claims. ........................................................................... 8

ARGUMENT .............................................................................................................. 9

    A.    Plaintiffs do not have standing because they were offered a new game worth more than they spent originally and none requested a refund. ........................................................................................................... 9

    B.    Plaintiff Munoz does not have standing because he did not provide CLRA notice. .................................................................................... 12

    C.    The FAC should be dismissed with prejudice because Plaintiffs do not have standing. ......................................................................... 12

    D.    In the alternative, the FAC should be dismissed because there is no viable class. ................................................................................. 13

        1.    The Court may strike class action allegations on the pleadings where jurisdiction is predicated on the CAFA and there is no viable class. ..................................................................................... 13

        2.    There is no viable class because plaintiffs rely on a variety of different state laws with different elements. ................................. 13

3. There is no viable class because each class member would have to prove that they viewed the alleged advertisements.........................15

CONCLUSION ............................................................................................... 16

2
DEFENDANT ASPYR MEDIA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ................................................................................ 9

*Colman v. Theranos, Inc.*,
  325 F.R.D. 629 (N.D. Cal. 2018) ......................................................................... 14

*Demmler*,
  No. 1:15-cv-13556-LTS,
  2016 U.S. Dist. LEXIS 123540 ........................................................................... 12

*Doe v. Holy See*,
  557 F.3d 1066 (9th Cir. 2009) ............................................................................... 9

*Doe v. Obama*,
   631 F.3d 157 (4th Cir. 2011) .............................................................................. 10

*Dreier v. United States*,
  106 F.3d 844 (9th Cir. 1996) ............................................................................... 10

*Epstein v. JPMorgan Chase & Co.*,
  2014 U.S. Dist. LEXIS 38628 (S.D.N.Y. Mar. 21, 2014) ................................... 12

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
  881 F.3d 679 (9th Cir. 2018) ............................................................................... 14

*Fensterer v. Capital One Bank (USA), N.A.*,
  No. 20-5558(RMB/KMW),
  2021 U.S. Dist. LEXIS 41520 (D.N.J. Mar. 5, 2021) .......................................... 11

*Gartin v. S&M NuTec LLC*,
  245 F.R.D. 429 (C.D. Cal. 2007) ........................................................................ 14

*Gordon v. Sig Sauer, Inc.*,
  No. H-19-585,
  2019 U.S. Dist. LEXIS 160584 (S.D. Tex. Sep. 20, 2019) ................................. 13

*In re Ford Motor Co. Vehicle Paint Litig.*,
  182 F.R.D. 214 (E.D. La. 1998) .......................................................................... 14

*In re McNeil Consumer Healthcare*,
  877 F. Supp. 2d 254 (E.D. Pa. 2012) ................................................................... 11

*Lee v. Samsung Elecs. Am., Inc.*,
   No. 4:21-cv-1321,
   2022 U.S. Dist. LEXIS 181165 (S.D. Tex. Sep. 21, 2022) ................................. 13

*Lepkowski*,
   No. 19-cv-04598-YGR,
   2019 U.S. Dist. LEXIS 214555 .......................................................................... 11

*Luman v. Theismann*,
   No. 2:13cv656,
   2014 U.S. Dist. LEXIS 14038, 2014 WL 443960 (E.D. Cal. Feb. 4, 2014) ........ 11

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581, 596 (9th Cir. 2012) ..................................................................... 14

*McQuillion v. Schwarzenegger*,
   369 F.3d 1091 (9th Cir. 2004) ........................................................................... 12

*Moorer v. StemGenex Med. Grp., Inc.*,
   830 F. App'x 218 (9th Cir. 2020) ....................................................................... 15

*Piemonte v. Viking Range, LLC*,
   No. 2:14-cv-00124 (WJM),
   2015 U.S. Dist. LEXIS 15154 (D.N.J. Feb. 9, 2015) ......................................... 13

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ............................................................................. 9

*Spokeo, Inc. v. Robins*,
   578 U.S. 330, 136 S. Ct. 1540 (2016) ................................................................ 10

*Strugala v. Flagstar Bank, FSB*,
   No. 5:13-cv-05927-EJD,
   2017 U.S. Dist. LEXIS 142298 (N.D. Cal. Sep. 1, 2017) .................................. 10

*Warth v. Seldin*,
   422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ..................................... 10

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ........................................................................... 10

*White v. Microsoft Corp.*,
   454 F. Supp. 2d 1118 (S.D. Ala. 2006) .............................................................. 11

**Rules**

CR 23 ........................................................................................................................ 14

Fed. R. Civ. P. 12. ................................................................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Malachi Mickelonis was disappointed when Aspyr did not release bonus content for a video game Mickelonis purchased. Mickelonis requested and received another game worth more than the one he originally bought in compensation. But then Mickelonis sued, claiming that the court should grant class-action status and award the very relief Mickelonis already obtained.

When Aspyr moved to dismiss because Mickelonis does not have standing, Mickelonis filed this amended FAC, adding a grab-bag of other plaintiffs from a variety of states, each with their own unique claims. Each of those plaintiffs was also offered content worth more than the game they purchased and none sought a refund. None have standing.

In the alternative, this Court should dismiss because the plaintiffs styled this matter as a class action but ask the Court to rule on a variety of different claims, each with different facts and applying different law. And, Plaintiffs claim that the class is anyone who purchased the game, but the only appropriate class in a false advertising case is persons who actually saw the advertisement. The Court is not required to waste judicial resources waiting until class certification where there can be no viable class based on the facts alleged.

# FACTUAL BACKGROUND

**A. Mickelonis brought a class-action lawsuit alleging that he failed to get a refund when he was disappointed that he did not receive video-game bonus content.**

According to the allegations in his FAC, Mickelonis viewed a tweet stating that a particular video game based on the *Star Wars* universe, abbreviated "KOTOR," or "KOTOR II" would potentially have an expansion set to be released later. Mickelonis claimed that he only purchased the game based on these alleged "advertisements," and that when the expansion was not released, he was harmed. He specifically claimed that:

> Despite their failure to release KOTOR's Restored Content DLC,

> Defendants refused to give refunds to purchasers of KOTOR.

First Amended FAC (FAC), ¶ 36. Mickelonis further claimed that:

> Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendants as a result of their intentional false advertising.

FAC, ¶ 40. Mickelonis also argues that:

> Plaintiff and Class Members were undoubtedly injured and lost money as a result of Defendants' misleading, deceptive, fraudulent, and intentionally false advertising.

FAC, ¶ 42. Setting aside whether any of these allegations are true, which they are not, the only monetary remedy Mickelonis requests is restitution, meaning the money he allegedly spent on the game. FAC, Prayer for Relief, ¶ A.

**B.   In truth, Mickelonis was offered and accepted a rebate token worth more than the game he bought.**

Aspyr is a video-game developer that creates and markets video games on a variety of game platforms. (November 7, 2023 Declaration of Ted Staloch ("Staloch Decl.") at ¶ 2.) The KOTOR version Mickelonis complains about was offered on Nintendo's Switch platform. (Staloch Decl. at ¶ 3.) On the Switch platform, consumers buy games produced by Nintendo or other game developers like Aspyr. *Id.* Games can be acquired either by buying them directly on the platform and paying Nintendo via a credit card or other payment mechanism, or through buying or otherwise acquiring game "tokens" from other locations. *Id.* A game token is a string of letters and numbers that, when entered into Nintendo's website, will unlock a particular game and allow the user to download it without making further payment. Tokens are unique and once released Aspyr has no way to know if they are ever redeemed. *Id.*

Aspyr and Nintendo divide the revenue from each game sale. (Staloch Decl. at ¶ 4.) When Nintendo sells a game, Nintendo remits a portion of the price to Aspyr. *Id.* And when Aspyr issues a game token, Aspyr has to pay Nintendo as soon as the

token is created and given to a consumer. *Id.*

On November 22, 2022, Mickelonis paid $11.14 for a copy of KOTOR. (Staloch Decl. at ¶ 5, Att. A.) That game was fully functional and could be played on the Switch system. (Staloch Decl. at ¶ 6.) On June 2, 2023, Aspyr sent out a tweet indicating that it was unfortunately unable to release any bonus content for KOTOR on Nintendo's platform. (Staloch Decl. at ¶ 7, Att. B.) Until shortly before that date, Aspyr believed it would be able to release the content, but a third party objected and Aspyr was unable to do so. *Id.* The tweet offered consumers who had purchased KOTOR a game token for a variety of different Star Wars games on the Switch platform, or a version of KOTOR with the bonus content on a different platform. *Id.*

Few if any video-game players play on only one platform. (Staloch Decl. at ¶ 8.) Instead, most have access to and use a variety of platforms, including PC, Switch, and others. *Id.* Accordingly, gamers who wanted access to the DLC could have requested KOTOR on a different platform and had full access. *Id.*

On June 3, 2023, rather than accept an exact replacement playable on a different platform, Mickelonis requested and received a token to Star Wars: Jedi Knight Jedi Academy, a game worth $19.99. (Staloch Decl. at ¶ 9, Att. C.) There are no communications indicating that Mickelonis requested a refund of his purchase price or that there was anything defective about the original version of KOTOR II he purchased. (Staloch Decl. at ¶ 10.) In sum, Mickelonis could have had exactly what he paid for – KOTOR II plus bonus content—on a different platform plus the KOTOR II game playable on the Switch, but he chose to keep the KOTOR II game on Switch and get a free, higher-value game as well. On July 8, 2023, Mickelonis filed his complaint, claiming that he was the victim of false advertising because Aspyr never released the bonus content on Switch.

**C.  The alleged false statements were displayed only on a few Tweets and on Aspyr's website for a short period of time.**

1.  The alleged false statements were released on Aspyr's Twitter account, a YouTube trailer, and on Aspyr's website. The Twitter posts are only viewable by persons who sign up to receive them. (Staloch Decl. at ¶ 11.) And even persons who sign up to receive them may not choose to view them. *Id.* The statements on the website were placed on an internal webpage. (Staloch Decl. at ¶ 12.) The YouTube trailer was available for a limited period of time and was not widely viewed. (Staloch Decl. at ¶ 13.)

KOTOR II was advertised using a variety of means and the version Mickelonis complains of was advertised—without the statements—and purchased on Nintendo's platform, meaning most consumers were likely to have purchased it without seeing the allegedly false statements. (Staloch Decl. at ¶ 14.)

**D.  Mickelonis added other plaintiffs from a variety of states and with a variety of claims.**

On October 4, 2023, Aspyr moved to dismiss because Mickelonis does not have standing. (Dkt. Nos. 16, 18.) In response, Mickelonis took out an advertisement on the Reddit chat platform, stating "Don't get Pwned by Aspyr for the KOTOR 2 Bait & Switch. You May be Eligible for a Refund – Join the Class Action Suit." (Staloch Decl. at ¶ 15, Att. D.)



8
DEFENDANT ASPYR MEDIA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS

On October 25, 2023, Mickelonis filed this amended FAC, adding 17 new plaintiffs from 12 different states.

The new plaintiffs share the following facts in common:
- Each allegedly purchased KOTOR.
- Each was offered a replacement game token worth more than the KOTOR game or the KOTOR game with bonus content playable on a different platform.
- Each kept the KOTOR game.
- None requested a refund. (Staloch Decl. at ¶ 15.)

At least one, Joshua Palmer accepted the token offer. *Id.*

Other than that, there is little in common. Instead, they raise a smorgasbord of allegations from different states. Attachment A to the Gray Declaration is a chart listing the elements of each statute. (November 8, 2023 Declaration of Steven Gray ("Gray Decl.") at Att. A.)

## ARGUMENT

**A. Plaintiffs do not have standing because they were offered a new game worth more than they spent originally and none requested a refund.**

Standing is a requirement for subject matter jurisdiction and is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, the Court assumes the factual allegations in the FAC are true and draws all reasonable inferences in the plaintiffs' favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). By contrast, in a factual challenge like this one, the defendant presents affidavits or other evidence showing lack of standing and the plaintiffs must then furnish affidavits or other evidence necessary to satisfy their burden of establishing subject matter jurisdiction. *Safe Air For Everyone*, 373 F.3d at 1039. The court need not presume the truthfulness of the plaintiffs' allegations

under a factual attack. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Instead, disputes in the facts pertinent to subject matter jurisdiction are viewed in the light most favorable to the opposing party. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

Here, there are no disputes of fact. Plaintiffs bought a video game and were offered a replacement game token—including an offer for the bonus content on a different platform—when bonus content was not released. Standing consists of three elements—a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016). To establish an injury in fact, a plaintiff must show that he or she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548. A concrete injury must be "'*de facto*'; that is, it must actually exist," and requires more than "a bare procedural violation." *Id.* at 1548–1549.

A plaintiff cannot attain standing by pleading injury to other class members or the class as a whole. *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011). In other words, if a named plaintiff in a purported class action cannot establish standing for themselves individually, they cannot "seek relief on behalf of [themself] or any other member of the class." *Warth v. Seldin*, 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

The only monetary relief Plaintiffs seek is restitution, meaning the money they spent on the game. (FAC, Prayer for Relief, ¶ A.) But a refund or replacement product deprives the plaintiff of standing. See e.g., *Strugala v. Flagstar Bank, FSB,* No. 5:13-cv-05927-EJD, 2017 U.S. Dist. LEXIS 142298, at *5 (N.D. Cal. Sep. 1, 2017) ("Strugala has received compensation for her inability to receive a 2012 refund stemming from Flagstar's erroneous Form 1098 report in 2012. Accordingly, the Court finds that Strugala lacks Article III standing to pursue

claims based on this injury."); *Luman v. Theismann*, Case No. 2:13cv656, 2014 U.S. Dist. LEXIS 14038, at *2, 2014 WL 443960 (E.D. Cal. Feb. 4, 2014) (dismissing for lack of standing where, two months before the plaintiffs filed suit, the defendant issued a plaintiff a refund for the cost of his orders, which included the purchase price and shipping costs); *Fensterer v. Capital One Bank (USA), N.A.*, No. 20-5558(RMB/KMW), 2021 U.S. Dist. LEXIS 41520, at *7-8 (D.N.J. Mar. 5, 2021) ("Plaintiff no longer has a concrete interest in the outcome in this case because she has received the very refund she was seeking."); *White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, 1128 (S.D. Ala. 2006) (ruling that a "limited remedy provid[ing] for repair or replacement [of a defective Xbox 360] . . . or [a] refund of the purchase price . . . would actually ensure that White received the substantive value of his bargain, not deprive him of it").

In addition to cash refunds, a plaintiff similarly loses standing through something else in lieu of a refund. *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 275 (E.D. Pa. 2012). For example, in *McNeil,* plaintiffs were offered a variety of rebate choices, including coupons for other products and the average retail price of the product they purchased. The court rejected Plaintiffs' argument that they suffered an injury in fact even though plaintiffs claimed they did not want a new product and paid more than the average retail price for the products they bought.

For those Plaintiffs who accepted the replacement products the inquiry ends there. The other Plaintiffs will undoubtedly argue that because they never accepted the game tokens they have standing to sue. Unsurprisingly, some litigious plaintiffs refuse (or claim to have refused) a refund in order to maintain standing. Courts "routinely" reject arguments like one plaintiff's that "she did not accept [the defendant's] offer as she has maintained both $20 and the replacement bottle in escrow." *Lepkowski*, No. 19-cv-04598-YGR, 2019 U.S. Dist. LEXIS 214555, at *5–7; *see also Epstein v. JPMorgan Chase & Co.*, 2014 U.S. Dist. LEXIS 38628, at *7

(S.D.N.Y. Mar. 21, 2014) ("The Court cannot accept Plaintiff's contention that by neither requesting nor cashing the Refund Check, he has somehow created standing. To do so would not only render hollow the injury-in-fact requirement, but would also engender a disincentive among potential litigants to attempt legitimately to resolve disputes without judicial intervention."); *see also Demmler*, No. 1:15-cv-13556-LTS, at p. 8, 2016 U.S. Dist. LEXIS 123540 ("[Plaintiff's] refusal to accept the $75 is immaterial. The question under Article III is whether a live case or controversy exists, and the mere fact that [plaintiff] did not accept unconditionally-provided remediation does not extend the life of the dispute.").)

Here, each Plaintiff was offered a game of greater value, including the option to acquire KOTOR II with the bonus content on a different platform. None declined the offer and instead requested a refund. They do not have standing to bring a class-action lawsuit to obtain the very relief they were already offered.

**B.     Plaintiff Munoz does not have standing because he did not provide CLRA notice.**

California's Consumer Legal Remedies Act is clear: No jurisdiction exists unless a plaintiff notifies the defendant of alleged defects at least 30 days prior to filing suit. Cal. Civ. Code § 1782(a). Plaintiff Mickelonis complied with this requirement, but Munoz did not. Accordingly, Munoz does not have standing to sue and his CLRA claims must be dismissed.

**C.     The FAC should be dismissed with prejudice because Plaintiffs do not have standing.**

A complaint should be dismissed without leave to amend when the plaintiff has had multiple attempts to amend or further amendment would be futile. *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004). Mickelonis has had two chances to plead standing and has not done so. There are no further facts that would grant standing and the FAC should be dismissed without leave to amend.

**D. In the alternative, the FAC should be dismissed because there is no viable class.**

    **1. The Court may strike class action allegations on the pleadings where jurisdiction is predicated on the CAFA and there is no viable class.**

Where the sole basis for jurisdiction is the Class Action Fairness Act, the Court need not waste judicial resources and go through the fruitless exercise of going through class certification only to determine that there is no viable class on legal grounds. Instead, it can strike the class action allegations and dismiss on the pleadings. See e.g., *Piemonte v. Viking Range*, LLC, No. 2:14-cv-00124 (WJM), 2015 U.S. Dist. LEXIS 15154, at *9 (D.N.J. Feb. 9, 2015) (Court dismissed class action allegations due to widely varying damages between plaintiffs); *Lee v. Samsung Elecs. Am., Inc.*, No. 4:21-cv-1321, 2022 U.S. Dist. LEXIS 181165, at *16-17 (S.D. Tex. Sep. 21, 2022) (due to variations in states' laws affecting predominance, "the Court finds that on the face of the pleadings there is no ascertainable national class for fraudulent concealment or unjust enrichment"); *citing Gordon v. Sig Sauer, Inc.*, No. H-19-585, 2019 U.S. Dist. LEXIS 160584, at *53 (S.D. Tex. Sep. 20, 2019).

Here, CAFA is the only basis for jurisdiction. Accordingly, if the class-action allegations are stricken, this is merely a collection of plaintiffs from different states alleging state-law claims far under the diversity-jurisdiction threshold and the entire case should be dismissed.

    **2. There is no viable class because plaintiffs rely on a variety of different state laws with different elements.**

A class action may only proceed if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." CR 23(b)(3). In particular, with regard to predominance, "[b]ecause variations in state law may swamp any common issues and defeat predominance . . . a court must analyze whether the consumer-protection laws of the affected States vary in material ways." *Espinosa v. Ahearn (In re Hyundai & Kia*

*Fuel Econ. Litig.)*, 881 F.3d 679, 702 (9th Cir. 2018). Where consumer protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving a dispute. *Id.* In fact, "if a class action would involve the application of multiple states' laws -- even if only on one claim -- it is likely to be too unmanageable under Rule 23(b)(3)(D)." *Colman v. Theranos, Inc.*, 325 F.R.D. 629, 650 (N.D. Cal. 2018); *see also Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 441 (C.D. Cal. 2007); *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D. La. 1998); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) ("variances in state law overwhelm common issues and preclude predominance for a single nationwide class" where "the law of multiple jurisdictions applies . . . to any nationwide class of purchasers").

Here, the multiple state laws Mickelonis seeks to wrap together have wildly disparate elements. As demonstrated in the chart attached to the Gray Declaration, the various state laws have more different than they have in common. For example, solely on the element of reliance, two California statutes require that the consumer must actually rely on the misrepresentation while a third allows a rebuttable inference of reliance; Arizona does not require actual intent to mislead but does require reliance; Colorado does not require that a consumer was actually misled but does require proof of more than negligence; and Florida confusingly does not require reliance but does require "causation." *See* Gray Decl. at Att. A and associated case citations.

Trying to tie together these disparate elements, some of which are contradictory, means the Court would be embroiled in a mass of mini-trials, each with different evidence, elements, and burdens of proof. That is simply unworkable as a class action and according the Court should strike the class-action allegations for states other than California because they fail the predominance requirement.

### 3. There is no viable class because each class member would have to prove that they viewed the alleged advertisements.

Plaintiffs frame the class as all those persons who purchased KOTOR within a particular state. A class is properly stricken as overbroad where it includes persons who were not injured as a result of the alleged harm. *Moorer v. StemGenex Med. Grp., Inc.*, 830 F. App'x 218, 220 (9th Cir. 2020). For example, in *Moorer,* the plaintiffs alleged that the defendant had falsely advertised stem cell treatments as cures for various illnesses. The *Moorer* plaintiffs alleged exactly the same causes of action as claimed by Mickelonis: violations of California's UCL, CLRA, and False Advertising Law, among others. The plaintiffs sought to certify a class of all persons who had purchased the stem cell treatments; the District Court narrowed the class by limiting it to persons who had been "exposed" to the false advertising by receiving an email or visiting a website that displayed it. The 9th Circuit reversed, finding even the District Court's narrowed class was overbroad. The 9th Circuit noted that:

> the subclass definitions include anyone who visited the website when it contained the PSRs or who received an email with the PSRs. It is possible that someone who visited the website failed to scroll down the homepage to view the PSRs; the same is true of the emails. A class that includes those who never saw the alleged misrepresentation is overbroad because those persons were, by definition, not injured and cannot recover.

*Moorer,* 830 F. App'x at 220. *Moorer* is precisely on point and controlling. Mickelonis seeks to certify a class of all persons who purchased KOTOR II because he alleges it was falsely advertised. The only permissible class would be persons who actually saw the advertisements. The alleged false advertisements were not widely disseminated; in order to view them, a purchaser would have had to either sign up for the Tweets, see the trailer, or view the webpage *before* making a purchase. (Staloch Decl. at ¶¶ 11-13.) While a few die-hard gamers undoubtedly did

so, Mickelonis was only able to find one additional plaintiff from California when he advertised on a Reddit board dedicated to the topic and asked for persons to come forward to join the suit.

The Court need not waste its and the parties' resources waiting until class certification to dismiss based on an improperly-defined class. Because Plaintiffs have alleged overbroad classes, the class action allegations must be stricken. And because the sole basis for jurisdiction is the class action, the FAC must then be dismissed. Aspyr concedes that Plaintiffs must be allowed an opportunity to amend should the Court dismiss on this ground, and if they replead they must do so with adequate factual allegations supporting their claim that a properly-defined class meets the numerosity and monetary harm requirements.

## CONCLUSION

Mickelonis was disappointed when he purchased a game and then was not able to receive bonus content. He asked for and accepted a game token worth more than the game he purchased and also kept the game. Unsatisfied, he filed a class-action lawsuit asking for the same relief he already received. Then threatened with dismissal, he took out an advertisement hoping to save his grab for riches and collected a variety of new plaintiffs from other states. But none have standing. Some failed to meet California's prerequisites to suit. Some accepted the same relief offered Mickelonis. And all were offered a replacement product worth more than the one they purchased and none requested a refund. Plaintiffs do not have standing and the case should be dismissed without leave to amend. In the alternative, the class-action allegations should be stricken and the matter dismissed for lack of jurisdiction.

Dated: November 8, 2023

Respectfully submitted,

Newman LLP

/s/ Nathaniel Durrance
Nathaniel Durrance (SBN: 229210)
nate@newmanlaw.com
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Telephone: (310) 359-8200
Facsimile: (310) 359-8190

Counsel for Defendant
Aspyr Media, Inc.