UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF
CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:    Malachi Mickelonis *et al.* v. Aspyr Media

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:  (IN CHAMBERS) REDACTED Order GRANTING IN PART and DENYING IN PART Defendant's Motion for Summary Judgment and DENYING Plaintiffs' Motion for Partial Summary Judgment (Dkts. 132, 136)**

Before the Court are two motions.  First is Defendant Aspyr Media's ("Defendant") motion for summary judgment.  Dkt. # 132 ("*D. MSJ*").  Plaintiffs Malachi Mickelonis, Joseph Afilani, Jacob Alva-Melville, Micaiah Flores, Matthew Gorka, Jared Hilliard, Yale Liebowitz, Jacob Mueller, Kevin Munoz, Colebie Niedermeier, Joshua Palmer, Bryce Phillips, Christopher Sousa, Rolando Arcos Vazquez, Adrian Villa, Brian Walsh, and Nicholas Yee (collectively, "Plaintiffs") opposed, Dkt. # 138 ("*P. Opp. MSJ*"), and Defendant replied, Dkt. # 140 ("*D. MSJ Reply*").  Second, Plaintiffs filed a motion for partial summary judgment.  Dkt. # 136 ("*P. MPSJ*").  Defendant opposed, Dkt. # 137 ("*D. Opp. MPSJ*"), and Plaintiffs replied, Dkt. # 141 ("*P. Reply MPSJ*").  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment and **DENIES** Plaintiffs' motion for partial summary judgment.

I.    Background

      A.    Factual Background

Defendant is a video game developer with over 25 years of experience and over 200 titles released.  *See* Dkt. # 140-1 ("*D. UF*") ¶ 1.  Defendant develops and releases its own games while also recreating and re-releasing historic games, including on modern

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                      Date: October 2, 2025

Title:    Malachi Mickelonis *et al.* v. Aspyr Media

platforms like Steam and Nintendo Switch. *Id.* ¶¶ 2, 4. The company has a longstanding arrangement with Lucasfilm Games ("Lucasfilm") to release historic Star Wars games, including Knight of the Old Republic II: The Sith Lords ("KOTOR II"). *Id.* ¶ 3. Both the first and second KOTOR games involve role-playing, where players adopt the personal of a Star Wars character and guide that player through a storyline. *Id.* ¶ 6.

In general, many games have the option for players to add their own content, including maps, designs, and other features. *Id.* ¶ 7. Other games are "hacked" by gameplayers, resulting in the release of new, unofficial content, called "mods" or "downloadable content" ("DLC"). *Id.* ¶ 8. The game studios that release these games are not the designers of these mods, and the mods often have gameplay or other issues. *Id.*

Several years after KOTOR II's release on Xbox in 2004, a group of fans (the "modders") created the mod at issue here (the "Mod") by discovering previously unreleased code in the game itself. *D. UF* ¶ 11. The modders included programmers, fans who supplied new voice-overs, and others. *D. UF* ¶ 13. Defendant contends that the Mod was limited to "a few new characters and an alternate ending," *id.* ¶ 12, but Plaintiffs emphasize that KOTOR II's files contained "a significant amount of unreleased and unfinished content," which the modders "unlock[ed], fill[ed] out, debug[ged], and complete[d] . . . ," Dkt. # 79-16 ¶ 9.[1] They also aver that the DLC included "expanded locations, new dialogue and voices, new character interactions, and even a new planet." *Id.* Defendant asserts that the modders worked under the leadership of two "Mod Leaders," who spoke for the group of modders and had authority to control the release of the Mod, though Plaintiffs contest the characterization of these two individuals as the "Mod Leaders." *D. UF* ¶ 14. ██████████████████████████████
████████████████████████

████████████████████████████████████████

---

[1] Due to inconsistencies between the parties in their manner of citation and the sprawling nature of the documents they cite (including several that they produced for purposes of class certification rather than summary judgment), the Court defaults to using docket numbers at several points in its order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:     Malachi Mickelonis *et al.* v. Aspyr Media

███████████████████████████████████████
███████████████████████████████████████

███████████████████████████

        Around 2016, Defendant obtained permission from Lucasfilm to re-release KOTOR
II.  *D. UF* ¶ 15.  In 2017, Defendant re-released KOTOR II for Steam, a platform that
allows Microsoft Windows users to play games on their personal computers, Nintendo
Switch, Xbox, and others.  *Id.* ¶¶ 16–17.  Steam users can access mods from game studios
like Defendant, and from other users.  *Id.* ¶ 18.  When re-releasing KOTOR II for Steam,
Defendant negotiated with the developers of the Mod for them to release the Mod at the
same time; the Mod would be free on Steam, just as it had been when the developers
released it in the early 2000s.  *Id.* ¶¶ 19–20.

        One of the platforms on which Defendant next planned to release KOTOR II was
Nintendo Switch.  *Id.* ¶ 21.  Defendant contacted the modders, who signed a formal release
on behalf of the developer group on May 10, 2022.  *Id.* ¶ 22.  The parties agree that
Defendant approached Nintendo, though they disagree as to whether Nintendo agreed to
release that Mod through its platform.  *Id.* ¶ 23.  ████████████████████████████
██████████████████████████████████████████████████████  Defendant avers
that by May 21, 2022, all parties including Lucasfilm had approved release, but Plaintiffs
contend that Defendant never received consent from all of the modders, and that Nintendo
of America provided final approval of the DLC.  *D. UF.* ¶¶ 24, 26.

        Defendant's Star Wars games historically cost between $9 and $15 to consumers.
*Id.* ¶ 27.  The Mod for KOTOR II would be released as an official DLC for Nintendo
Switch, and Defendant would offer the Mod for free on all platforms, *id.* ¶ 28, as Lucasfilm
required that there be no additional charge for the Mod on any platform, *id.* ¶ 29.  The Mod
contributors expected Defendant to offer the Mod for free, in line with a cultural practice
in the gaming community not to charge for mods.  *Id.* ¶ 30.  The parties disagree on the
game's pricing—Defendant argues that it priced KOTOR II at $11.99 for the basic version
of the game, while Plaintiffs aver that the cost was closer to $15.  *Id.* ¶ 31.  Regardless of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01220-MWC-ADS                              Date: October 2, 2025

Title:      Malachi Mickelonis *et al.* v. Aspyr Media

the initial cost, users would have had the opportunity to later download the Mod when
Defendant released it at no charge.  *Id.* ¶ 32.

When marketing the game, Defendant advertised different features of the game to
appeal to different consumers.  *Id.* ¶ 51.  Many of KOTOR II's users are drawn to the game
because of Star Wars, rather than a general interest in video games.  *Id.* ¶ 52.  Accordingly,
when marketing to those consumers, Defendant focused on emphasizing the Star Wars
theme and the Lucasfilm logo.  *Id.* ¶ 53.  Other users were more focused on KOTOR II's
game type—a first-person, choose-your-own-adventure story, and the bulk of Defendant's
advertising focused on these users.  *Id.* ¶¶ 54–55.  That advertising included a YouTube
video showing actual gameplay and describing the game's story.  *Id.* ¶ 55.

In late May 2022, Defendant released the YouTube video.  *Id.* ¶ 56.  The final four
seconds of the video included an announcement reading "Coming Soon: Restored Content
DLC."  *Id.*  Nintendo posted the same trailer on its e-shop for KOTOR II where consumers
would purchase the game.  *See* Dkt. # 139-1 ¶ 19.   Defendant also announced the Mod in
a tweet on May 27, 2022, and referred to the Mod's release publicly multiple times in June
2022.  *D. UF* ¶ 57.  ███████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████  On June 8, 2022,
Defendant released a version of KOTOR II for Nintendo Switch, while the release of the
Mod was still pending.  *D. UF* ¶ 58.

Defendant chronicles that on June 28, 2022, Lucasfilm asked that Defendant change
the Mod credits to reflect only real names rather than gamer aliases for the modders, but
Plaintiffs state that Lucasfilm instead directed Defendant to obtain a release on the DLC
intellectual property from every modder who had contributed to the Mod.  *Id.* ¶ 59.  The
parties also disagree on whether the Mod contributors were uncomfortable with disclosing
their real identities, or if they were just unreachable.  *Id.* ¶ 60.  At the time that some of the
modders signed the release, Defendant learned that a few of these individuals were
unreachable.  *Id.* ¶ 61.  ███████████████████████████████████████████████████████████
████████████████████

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                         Date: October 2, 2025

Title:     Malachi Mickelonis *et al.* v. Aspyr Media



Defendant and Mod team members attempted to fulfill Lucasfilm's request regarding the intellectual property rights. *D. UF.* ¶ 63.  One of the Mod team members noted that the contributions of several individuals in the credits were minimal, meaning that the developers could cut out or replace their contributions without significantly impacting the Mod. *Id.* ¶ 64.  After most of the Mod contributors had signed the written agreements—though Defendant and the contributors could not find several—one of the Mod contributors suggested that "we only need signatures from people who created something custom instead of just scripting pre-existing content." *Id.* ¶ 65.  This individual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                          Date: October 2, 2025

Title:    Malachi Mickelonis *et al.* v. Aspyr Media

noted that they already had all of the signatures from the Mod contributors who created custom content.  *Id.*

Despite Mr. Reilly's admonishment that "all marketing activity should be paused," Chris Bashaar—a "Brand Manager" for Defendant—acknowledged that his team did not remove several advertisements at the time of Mr. Reilly's directive.  Dkt. # 139-2 ("*Kim Decl.*"), Ex. G, 17.  These advertisements included the YouTube video announcing the release and various tweets referring to the same.  *Id.* 120.

In response to these new developments, Defendant met with Lucasfilm in September 2022.  *D. UF* ¶ 66.  Defendant proposed either releasing the Mod with the approvals it already had (removing people who made minimal contributions) or releasing the DLC through a third-party platform rather than as an official Nintendo release.  *Id.* ¶ 67.  On October 12, 2022, Lucasfilm told Defendant that it was "just waiting for a final 'all clear'" from Lucasfilm's legal department to go ahead with the release.  *Id.*

In March 2023, Lucasfilm announced that it would not approve the Mod's release.  *D. UF* ¶ 71.  Accordingly, Defendant announced on June 2, 2023, that it would be unable to release the Mod and offered a free game to maintain customer loyalty.  *Id.* ¶ 72.  Ultimately, Defendant never released the DLC for KOTOR II, Dkt. # 140-1 ¶ 6, but it still sold 160,000 copies of KOTOR II worldwide.  *D. UF* ¶ 45.

Plaintiffs provide sample comments as evidence of consumers' excitement about the DLC and their anger as a result of their inability to access it.  *See* Dkt. # 100-1, Ex. Y.  These include:

- "They knew no one would buy it without the rcm."  *Id.* 99.
- "Well, why would I but [*sic*] this again… RESTORED CONTENT DLC ON SWITCH?!?"  *Id.*
- "Restored Content DLC? That's really good, more than what I expected… Serious?! Even the current Xbox version doesn't have it. I might need to buy it… If that's true it's a must buy to me."  *Id.* 100.
- "is this fake? No way they add in the restored content mod."  *Id.* 101.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:     Malachi Mickelonis *et al.* v. Aspyr Media

- "It's not coming. A lot of people were upset… No it got canceled a while back… they couldn't make it happen but kept on it complete silence for like a year before finally telling us it wasn't happening" *Id.* 202.
- "Sigh. What a big letdown Aspyr ended up being. All that hype after the remake announcement. Embarrassing." *Id.* 104.
- "Fuck Aspyr for not offering us refunds and for straight up bait and switching us (which is illegal by the way)[.]" *Id.*
- "Free game key. How about a refund guys. This was one of the key selling points of the port, a lot of people only bought it because they expected the dlc[.]" *Id.* 105.
- "This. The main reason I grabbed KOTOR 2 on Switch is because the restored content was finally being added in as official content[.]" *Id.*
- "That's certainly the reason why I bought it. I wouldn't have purchase it on switch at all if not for the promise of restored content…" *Id.*
- "Literally the only reason anyone bought KOTOR II on Switch in the first place… We should be all demanding refunds!" *Id.* 106.
- "Where the fuck is my refund option. FUCK Aspyr… This is literally the epitome of a bait and switch which is ridiculously illegal." *Id.* 113.

Plaintiffs submitted expert reports from Dr. Wade Roberts and Dr. Andrea Matthews.  Dr. Roberts, a forensic economist, stated that he was of "the professional opinion that a class-wide determination of economic damages is both feasible and highly probable for this case." Dkt. # 82-1, 297.  He based his conclusion on "the clear nature of the misrepresentation, the availability of relevant data, the application of established research methodologies capable of isolating and measuring the impact on consumers, and the uniformity of impact on the class members." *Id.*  He also averred that "[f]ailure to deliver on the promise of delivering the DLC reduces the actual value derived from the game, leading to a loss of consumer surplus (the difference between what consumers were willing to pay and the utility they ultimately received)." *Id.* 299.  He referred to the DLC as a "quality signal" to consumers, *id.*, and that "[g]iven that the Restored Content DLC was likely a major factor influencing consumer demand for the Switch version of the game, its cancellation is expected to be positively correlated with consumer dissatisfaction," *id.* 296.  Moreover, he argued that Defendant's remedial action of offering an alternative Star Wars game failed to provide adequate compensation. *Id.* 309.  But Defendant identifies that although Dr. Roberts proposed several next steps to determine the value of the Mod,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01220-MWC-ADS                      Date: October 2, 2025

Title:      Malachi Mickelonis *et al.* v. Aspyr Media

including selecting a representative sample of purchasers and conducting interviews, he never completed those steps.  *See D. MSJ* 4; Dkt. # 80-2, 302.

Dr. Matthews, Assistant Professor of Marketing in the Barton School of Business at Wichita State University, concluded that "the Restored Content DLC in the KOTOR II game is highly likely to be material to the target market of the KOTOR II."  Dkt. # 79, 5.  She based her conclusions on the fact that the Mod was material to consumers who communicated with Defendant, referencing those communications that appeared in Plaintiffs' complaint.  *Id.*  She asserted that the Restored Content DLC offering impacted how consumers used the KOTOR II game, and that Defendant believed that the DLC would impact consumer purchases.  *Id.* 8–9.

By contrast, Defendant provided the expert report of Frank Gilson, who had over 20 years of experience in video game production, publishing, and pricing strategy through his work at various companies that produced video games.  Dkt. # 93-22, 3.  He concluded that the price of the Nintendo Switch version was only $14.99 (by contrast to the $49.99 price of KOTOR II in 2004) because of "its base content and platform-specific enhancements, not a promise of additional free DLC."  *Id.* 3.  He also opined that the Mod was "fundamentally a community mod, not official DLC, due to its origins, lack of any commercial price, development process, and distribution methods, which align with standard characteristics of community-driven content in the gaming industry."  *Id.*  That led Mr. Gilson to his finding that the Mod "has no commercial value."  *Id.*  He also identified that "[i]f an end user is willing to modify their Nintendo Switch," then they could install and use the Mod, which has been the case since June 2022.  *Id.*

Defendant also produced a study from Hal Poret, an expert in survey methodology. He conducted an online survey over 300 individuals that played KOTOR II for Nintendo Switch.  Dkt. # 93-24, 6.  He found that 96.3% of respondents stated that they were satisfied with the overall purchase, while 1.7% said that they were dissatisfied.  *Id.* 12.  Mr. Poret also submitted that "[w]hen asked for all the reasons that come to mind for why respondents were satisfied or dissatisfied with their purchase of the game, 0.7% of respondents (2 out of 300) mentioned anything having to do with restored DLC."  *Id.*

Plaintiffs maintain that Mr. Poret's survey was methodologically flawed.  They cite an expert report of Dr. Tao Sun, who specializes in research methods and survey methodology.  Dkt. # 99-1, 187.  He stated that based on his review of Mr. Poret's survey

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:    Malachi Mickelonis *et al.* v. Aspyr Media

and report, he believes that Mr. Poret's survey "suffer[ed] from a severe validity issue, that
is, it failed to measure what is supposed to measure—material impact of the 'deceptive'
and 'false' advertising message about the Restored Content DLC upon relevant consumer's
intention to purchase KOTOR II."  *Id.*  He pointed to "an invalid measurement of
materiality, an incorrect definition of universe and a major leading question."  *Id.*

B.    Procedural Background

Plaintiffs initially filed this case as a class action lawsuit against Defendant.  *See*
Dkt. # 1.  On March 19, 2024, Plaintiffs filed their second amended complaint, which
asserts the following causes of action: (1) California Unfair Competition Law ("UCL")
(Cal. Bus. & Prof. Code §§ 17200, *et seq.*); (2) California False Advertising Law ("FAL")
(Cal. Bus. & Prof. Code § 17500); (3) California Consumer Legal Remedies Act
("CLRA") (Cal. Civ. Code §§ 1770, *et seq.*); (4) Arizona Consumer Fraud Act ("CFA")
(Ariz. Rev. Stat. §§ 44-1522, *et seq.*); (5) Colorado Consumer Protection Act ("CCPA")
(Colo. Rev. Stat. §§ 6-1-105, *et seq.*); (6) Florida Deceptive and Unfair Trade Practices Act
("DUTPA") (Fla. Stat. §§ 501.204, *et seq.*); (7) Georgia Fair Business Practices Act (Ga.
Code Ann. §§ 10-1-393, *et seq.*); (8) Nevada Deceptive Trade Practices Act ("DTPA")
(Nev. Rev. Stat. §§ 598.0915, *et seq.*); (9) New Jersey Consumer Fraud Act ("CFA") (N.J.
Rev. Stat. §§ 56:8-2, *et seq.*); (10) Ohio Consumer Sales Practices Act ("CSPA") (Ohio
Rev. Code Ann. §§ 1345.02, *et seq.*); (11) Oregon Unlawful Trade Practices Act ("UTPA")
(Or. Rev. Stat. §§ 646.607, *et seq.*); (12) South Carolina Unfair Trade Practices Act
("UTPA") (S.C. Code Ann. §§ 39-5-20, *et seq.*); (13) Texas Deceptive Trade Practices Act
("DTPA") (Tex. Bus. & Com. Code Ann. §§ 17.46, *et seq.*); and (14) Washington
Consumer Protection Act ("CPA") (Wash. Rev. Code §§ 19.86.020, *et seq.*).  *See* Dkt. # 45.
Plaintiffs moved for class certification, *see* Dkt. # 78, which the Court denied without leave
to amend, *see* Dkt. # 119.

Defendant now brings a motion for summary judgment on all claims.  *See D. MSJ.*
In addition to filing its opposition, *see P. Opp. MSJ,* Plaintiff filed a motion for partial
summary judgment requesting that the Court find Defendant's representation that it would
release the DLC false and misleading, *see P. MPSJ.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:23-cv-01220-MWC-ADS                        Date: October 2, 2025

Title:    Malachi Mickelonis *et al.* v. Aspyr Media

II.    Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001); *see also Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 2001) ("the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment.") (internal quotation marks and citation omitted).[2]    Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

---

[2] To the extent that the parties assert evidentiary objections along with their briefing and the Court relies on objected-to evidence, the objections are overruled. *See Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                          Date: October 2, 2025

Title:    Malachi Mickelonis *et al.* v. Aspyr Media

III.   Defendant's Motion for Summary Judgment

Defendant makes various arguments in support of its motion for summary judgment. The Court will address each in turn.

A.   Materiality

First, Defendant contends that the Mod is not material to a reasonable consumer, which is a necessary element for all state laws under which Plaintiffs bring their action. *D. MSJ* 11–12. It avers that Plaintiffs must show more than a mere possibility that Defendant's actions misled a consumer, instead contending that the deception must be deceiving to "'a significant portion of the general consuming public or of targeted consumers . . . .'" *Id.* 13 (quoting *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777–78 (9th Cir. 2024)). Moreover, it argues that even if a small segment of an audience has specialized knowledge which makes an aspect material, that is irrelevant, as the Court should consider advertising as directed to the general public. *Id.* 14.

Defendant is correct that materiality to the reasonable consumer is a necessary element under of each of these states' laws.[3] "A fact is material when a 'reasonable consumer' would have behaved differently knowing it." *Kelly v. BP W. Coast Prods. LLC*, No. 2:14-cv-01507-KJM-CKD, 2014 WL 7409220, at *7 (E.D. Cal. Dec. 30, 2014) (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007)). Moreover, a plaintiff must show "more than a mere possibility" that a few consumers could understand a representation a certain way. *Whiteside*, 108 F.4th at 777–78. While a plaintiff indeed

---

[3] *See Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1091 n.9 (S.D. Cal. 2016) (discussing California law); *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1302 (10th Cir. 2022) (Colorado law); *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 830 (D. Ariz. 2016) (Arizona law); *Gonzales v. Bank of Am., N.A.*, No. 2:14-cv-00088-GMN-VCF, 2015 WL 4744432, at *3 (D. Nev. Aug. 10, 2015) (Nevada law); *State ex rel Rosenblum v. Living Essentials, LLC*, 335 Or. App. 30, 33 (2024) (Oregon law); *Robertson v. GMAC Mortg. LLC*, 982 F. Supp. 2d 1202, 1209 (W.D. Wash. 2013) (Washington law); *Point Conversions, LLC v. WPB Hotel Partners, LLC*, 324 So.3d 947, 957 (Fla. Dist. Ct. App. 2021) (Florida law); *Sun Chem. Corp. v. Fike Corp.* 981 F.3d 231, 238–39 (3d Cir. 2020) (New Jersey law); *Durnell's RV Sales Inc. v. Beckler*, 226 N.E.3d 362, 380 (Ohio Ct. App. 2023) (Ohio law); *Doe 3 v. Varsity Brands*, No. 6:22-3510-HMH, 2023 WL 4113185, at *10 (D.S.C. June 21, 2023) (South Carolina law); *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex. 1980) (Texas law).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    8:23-cv-01220-MWC-ADS                     Date: October 2, 2025

Title:      Malachi Mickelonis *et al.* v. Aspyr Media

must demonstrate that the representation would mislead a "significant portion" of the public, *see id.*, a "'plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct,'" *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 327 (2011) (quoting *In re Tobacco II Cases*, 45 Cal. 4th 298, 328 (2009)).

Defendant has failed to make the requisite showing for the Court to grant summary judgment on the basis of materiality. It relies on the Hal Poret study, which it states "confirms that almost all purchased KOTOR II for the storied game itself—or for its connection to Star Wars—and not for the Mod." *D. MSJ* 13 (citation omitted). But Plaintiffs provide expertise from Dr. Tao Sun that could undermine the reliability of Mr. Poret's survey, as Dr. Sun highlighted "an invalid measurement of materiality, an incorrect definition of universe and a major leading question." Dkt. # 99-1, 187. As such, and based on the contents of both reports, a reasonable jury could find Dr. Sun's analysis more credible than that of Mr. Poret. *Asetek Holdings, Inc. v. CoolIT Sys., Inc.*, No. C-12-4498 EMC, 2014 WL 4090400, at *10 (N.D. Cal. Aug. 19, 2014) ("A reasonable jury, based on the record, could conclude either way, and this precludes summary judgment.").

Defendant next highlights that it markets to various segments of the buying public and argues that Plaintiffs represent a small portion of the overall public to which Defendant would have marketed. *Mot.* 14. As such, Defendant argues, a jury could not deem them a reasonable consumer. *Id.* Defendant asserts (without citation) that all plaintiffs share the same seven specific characteristics and that others with the same characteristics would constitute only a small fraction of the public. *Id.* But Plaintiffs have provided the Court with their own testimony and evidence of a several individuals online who experienced the material deficiency that stand at the center of Plaintiffs' claims.[4] *See* Dkt. # 79-1–18; *see* Dkt. # 100-1, Ex. Y. Defendant has not offered sufficient evidence to show that no reasonable jury could deem Plaintiffs reasonable consumers.

---

[4] Though Defendant argues that such online excerpts could not be admissible at trial, the Court does not find in obvious that there is no form in which Plaintiffs could present this evidence. *See Bohnert v. Roman Catholic Archbishop of S.F.*, 136 F. Supp. 3d 1094, 1111 (N.D. Cal. 2015) ("'Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial.'" (quoting *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011))).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                          Date: October 2, 2025

Title:   Malachi Mickelonis *et al.* v. Aspyr Media

Despite Defendant's contention that Plaintiffs' failure to provide a numerical estimate should be fatal to their claim in light of Defendant's survey evidence, *see D. MSJ* 14, this argument ignores both that a jury could find Defendant's survey evidence unreliable and that a jury could understand the reference to the DLC in Defendant's advertisement to be material on its own.  *See Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 275 (S.D. Cal. 2023) (stating that under the CLRA, "deceptiveness and materiality are judged by the advertisement's effect on a reasonable consumer, meaning that a jury will determine whether the advertising would be deceptive and material to an ordinary consumer acting reasonably under the circumstances." (internal quotation marks and citations omitted)); *see also Out of the Box Enters., LLC v. El Paseo Jewelry Exch., Inc.*, No. EDCV 10-01858 VAP (DTBx), 2012 WL 12893690, at *12 (C.D. Cal. May 11, 2012) (stating that "a survey is not necessary to demonstrate materiality").

Moreover, "[i]n determining whether a statement is materially misleading under California law, the primary evidence . . . is the advertising itself." *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 869 (9th Cir. 2025) (internal quotation marks and citation omitted).  Given that the last image that anyone viewing the announcement YouTube video saw were the words "Coming Soon: Restored Content DLC," *D. UF* ¶ 56, and that ███████████████████████████████████████████, a reasonable jury viewing the advertisement could also find materiality based on its contents.  In response to Dr. Matthews' contention that Defendant's decision to highlight the DLC is evidence of its materiality, Defendant makes much of *Shanks v. Jarrow Formulas, Inc.*, No. CV 18-09437 PA (AFMx), 2019 WL 4398506 (C.D. Cal. Aug. 27, 2019).  *See D. MSJ Reply* 2.  To be sure, the Court is careful to recognize that it is the reasonable consumer's perspective that matters, not the perspective of the advertising company.  *Shin v. Sanyo Foods Corp. of Am.*, 348 F.R.D. 477, 487 (C.D. Cal. 2025) (identifying that "materiality depends on the perspective of the consumer, not the perspective of the defendant" (citation omitted)).  Defendant's *Shanks* excerpt refers to an argument that the court should have considered scientific literature as evidence of the reasonable consumer's purchasing decisions.  *Shanks*, 2019 WL 4398506, at *5–6.  But here the Court is not looking to an external source as a proxy for a reasonable consumer's views, but the words of the advertisement itself— the "primary evidence" under consideration.  *See Noohi*, 146 F.4th at 869.  As such, Defendant's materiality argument is not sufficient for the Court to grant summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:   Malachi Mickelonis *et al.* v. Aspyr Media

B.   Standing

Next, Defendant asserts that because Plaintiffs cannot prove that the Mod has any economic value, they lack standing to bring their claims.  *D. MSJ* 15.  Because the Mod was a free add-on, Defendant believes that there could be no injury-in-fact necessary to confer standing.  *Id.*  It rejects Plaintiffs' testimony that the Mod had personal value to them and focuses on the fact that Dr. Roberts failed to conduct an actual study to prove that the Mod had value, but instead only suggested potential studies to make such a showing.  *Id.* 16.  Defendant also dismisses Dr. Matthews' study on a methodological basis.  *Id.*  Defendant repeats the same argument with respect to economic loss as an element of false advertising claims.  *Id.* 17.

Standing requires "concrete, particularized, and actual or imminent (as opposed to conjectural or hypothetical) injury in fact, fairly traceable to the defendant's conduct, which will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  To demonstrate standing in the context of false advertising, a plaintiff must "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*."  *Kwikset*, 51 Cal. 4th at 322.  "Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing."  *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846–47 (N.D. Cal. 2012).

At the very least, Plaintiffs have standing based on their claims that they would not have purchased KOTOR II but for the promise of the DLC.  Defendant focuses on the fact that Plaintiffs do not argue that the Mod has economic value on its own, but they need not do so.  Rather, a plaintiff can demonstrate standing by showing that absent the alleged misrepresentation, they would not have spent their money.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).  ("Allegedly, plaintiffs spent money that, absent defendants' actions, they would not have spent.  This is a quintessential injury-in-fact.").  That is exactly what Plaintiffs' declarations state here.  *See, e.g.*, Dkt. # 79-1–18 ¶ 4 ("I relied on the promise that the DLC was 'coming soon' and purchased KOTOR II as a result.").  This testimony goes beyond "mere disappointment," *see D. MSJ* 16, and the case law is replete with cases resembling Plaintiffs', *see, e.g.*, *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-cv-00296-WHO, 2013 WL 5514563, at *3 (N.D. Cal. Oct. 4, 2013) (finding standing where plaintiffs alleged that they purchased yogurt product listing evaporated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:    Malachi Mickelonis *et al.* v. Aspyr Media

cane juice as an ingredient when that term was misleading); *Galope v. Deutsche Bank Nat. Tr. Co.*, 566 Fed. Appx. 552, 552 (9th Cir. 2014) (finding that where plaintiff purchased a loan without knowledge that defendants were manipulating the LIBOR rate, but plaintiff never made interest payments under that rate, plaintiff still had standing because her "cognizable injury occurred when she purchased the loan" (citation omitted)); *Berke v. Whole Foods Mkt., Inc.*, No. 19-7471, 2020 WL 5802370, at *1, *8 (C.D. Cal. Sept. 18, 2020) (finding plaintiffs who paid a premium that they otherwise would not have had standing where they alleged that water labeled as "pure" and "some of the purest and most pristine water available in the U.S." contained among the highest levels of arsenic among bottled waters); *see also Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 660–63 (N.D. Cal. 2016) (finding plaintiff who would not have purchased or would have paid less for chocolate had she known about labor abuses in the supply chain had standing to bring claims).

Accordingly, the Court finds that Plaintiffs have standing to bring their claims.

C.    Injunctive Relief

Defendant argues that there is nothing for the Court to enjoin related to Plaintiffs' false advertising claim because it is no longer advertising the Mod. *Id.* 18. Specifically, it asserts that it has "already taken down all versions of the trailer within its control and will not re-post them." *Id.* Plaintiffs respond that Defendant still markets the DLC as "coming soon." *P. Opp. MSJ* 12. Plaintiffs specifically point to the KOTOR II trailer (which references the DLC) still being available on Defendant's "affiliate platforms that it controls, including IGN and Gamespot." *Id.* Plaintiffs also highlight the deposition of Mr. Bashaar, who "testified that IGN and Gamespot are the online websites that Aspyr works with and shared the KOTOR II marketing trailer with." *Id.* (citing *Kim Decl.*, Ex. G).

Though Plaintiffs have provided limited evidence to suggest that Defendant would have some control over these entities, Defendant has provided none. A moving party is entitled to summary judgment only where it has shown that there are no genuine issues of material fact, even if the nonmoving party does not offer sufficient materials in support of its opposition. *Henry v. Gill Indus. Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Where the movant's papers are insufficient to support its motion, there is a genuine issue of material fact. *Id.* Because the Defendant has provided no information to rebut Plaintiffs' argument,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:      Malachi Mickelonis *et al.* v. Aspyr Media

there remains a genuine issue of material fact, and the Court denies summary judgment on this issue.

      D.    <u>Knowledge</u>

Next, Defendant avers that Plaintiffs cannot show the requisite knowledge to maintain a claim of consumer deception. *D. MSJ* 18. Underlying all of its arguments is its attestation that until Lucasfilm told Defendant that it would not approve the Mod's release in March 2023, Defendant believed that it would be able to release the Mod. *See D. MSJ* 18. Defendant points to the specific laws of California, Oregon, South Carolina, and Colorado, which it believes require a showing that "the defendant knew or reasonably should have known that any false statements were in fact false when made." *Id.* 18–19. The Court will evaluate each state in turn.

      i.    *California*

As to the California claims, Defendant insists that a California FAL claim prohibits "only negligent as well as intentional dissemination of misleading advertising." *Id.* 20 (internal quotation marks and citation omitted). Defendant also highlights a CLRA requirement that Plaintiffs prove that Defendant knew or had reason to know of the facts that rendered the representation misleading at the time it was made. *Id.* 21. Plaintiffs contend that the California UCL instead imposes strict liability, and that the same is true for claims under the CLRA. *P. Opp. MSJ* 11–12.

As an initial matter, a claim under the California FAL statute must show that (1) the statements in an advertising are untrue or misleading and (2) the defendants knew, or should have known, that the statements were untrue or misleading. *Mitchell v. 3PL Sys., Inc.*, SACV 11-534 AG (ANx), 2011 WL 13130874, at *4 (C.D. Cal. Nov. 14, 2011) (citing *People v. Lynam*, 253 Cal. App. 2d 959, 965 (1967)); *see* Cal. Bus. & Prof. Code § 17500. For claims seeking injunctive relief under the California UCL, the Court finds that Plaintiffs need not show Defendant's knowledge. *See In re Tobacco II Cases*, 46 Cal. 4th at 312 ("A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements [is] required to state a claim for injunctive relief under the UCL." (internal quotation marks and citations omitted)). Rather, under the UCL, "it is necessary only to show that members of the public are likely to be deceived." *Id.* Lastly, under the CLRA,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:      Malachi Mickelonis *et al.* v. Aspyr Media

Plaintiffs must show that Defendant had knowledge of the advertisement's falsity. "[T]o seek damages under the CLRA, plaintiffs must allege that a defendant had knowledge, or should have had knowledge that advertising or a business practice was deceptive or misleading." *Coffelt v. Kroger Co.*, No. EDCV 16-1471 JGB (KKx), 2017 WL 10543343, at *10 (C.D. Cal. Jan. 27, 2017) (citing Cal. Civ. Code § 1784).

On all California claims, there is a genuine dispute of material fact as to whether Defendant knew that it would not be able to release the Mod for KOTOR II.  With respect to late May 2022 (when Defendant released its advertisements), Plaintiffs have presented evidence that Defendant had yet to receive approval for the DLC's release, *Kim Decl.*, Ex. G, 138–141, meaning that it was possible that Defendant would be unable to release the DLC.  The test for whether a given advertisement is false is whether members of the public are likely to be deceived.  *See Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 331–32 (1998).  And "even if advertising is true, if cast in a form that has a likelihood or tendency to deceive or confuse the public," a defendant may be liable under California false advertising law.  *Butler v. Adoption Media, LLC*, NO. C 04-0135 PJH, 2004 WL 7338759, at *9 (N.D. Cal. May 3, 2004) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)).  Here, Defendant's advertisement that the DLC was "Coming Soon" could confuse the public into believing that the game would certainly have a DLC, when there remained a distinct possibility that the DLC would never receive approval.  Moreover, Plaintiffs have offered enough evidence to create a genuine dispute regarding Defendant's knowledge of that possibility of non-approval.  On the current record, a reasonable jury could conclude that Defendant's advertisement was knowingly false.  *See Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1258 (2018) (stating that failure to disclose a fact can be actionable "when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff' (citing *Collins v. eMachines, Inc.* 202 Cal. App. 4th 249, 255 (2011)).  Accordingly, the Court cannot grant Defendant's motion for summary judgment on Plaintiffs' California claims on these grounds.

    *ii.    Oregon*

With respect to Plaintiffs' claims under Oregon law, Defendant advances that "Oregon requires not only knowledge but intent." *D. MSJ* 21 (citation omitted).  Plaintiffs dispute that Oregon law requires knowledge, though they are mostly incorrect. "[D]efendant['s] representations violated the [Oregon] UTPA only if, at the time that they were made, defendant[] knew or should have known that [its] services did not have the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01220-MWC-ADS                                Date: October 2, 2025

Title:      Malachi Mickelonis *et al.* v. Aspyr Media

qualities defendant[] represented them to have." *Rathgeber v. James Hemenway, Inc.*, 335 Or. 404, 412–13 (2003) (citing Or. Rev. Stat. Ann. § 646.638(1) (identifying that the practice causing plaintiff's loss must be wilful)). "As a result, a plaintiff need only allege facts 'from which the Court could infer Defendant knew or should have known [its conduct] was a violation of the [Oregon] UTPA." *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1068, 1105 (N.D. Cal. 2021) (citing *Bank of N.Y. Mellon v. Stabenow*, No. 3:16-cv-01590-MO, 2017 WL 1538156, at 5 (D. Or. Apr. 25, 2017)). Even if Plaintiffs cannot show that Defendant actually knew of its advertisement's falsity, they need only provide "proof of ordinary negligence by a defendant in not knowing, when it should have known, that a representation made by [Defendant] was not true." *State ex rel. Redden v. Discount Fabrics, Inc.*, 289 Or. 375, 385 (1980).

As with the California claims, Plaintiffs have provided sufficient information to raise a genuine dispute of material fact. Because Plaintiffs offer facts suggesting that Defendant never had approval for the DLC when it released the trailer and associated announcements, a reasonable jury could find that Defendant was at least negligent in representing that it would release the DLC. *See Ruiz v. Hammer & Nails, LLC*, No. 2:10-CV-1021-SU, 2013 WL 5436604, at *10 (D. Or. Aug. 13, 2013) (finding that a reasonable jury could infer that defendant knew or should have known that concrete was not suitable for plaintiffs' residential foundation but failed to disclose this fact). As such, the Court cannot grant summary judgment on Plaintiffs' Oregon claim on these grounds.

> ### iii.   *South Carolina*

Defendant also believes that South Carolina's requirement of proof of at least constructive knowledge limits its liability. *D. MSJ* 21. Moreover, it highlights that South Carolina Plaintiff Jared Hilliard claims to have purchased the game almost one month before Defendant had offered the game for pre-sale. *Id.* In response, Plaintiffs argue that they need not show intentional deception to prevail but fail to address the date of Mr. Hilliard's purchase. *See P. Opp. MSJ* 13.

To bring a claim under the South Carolina Unfair Trade Practices Act (SCUTPA), a plaintiff need not show "that a representation was intended to deceive but only that it had the capacity to do so." *Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 294 S.C. 240, 242 (S.C. 1988) (citation omitted). Still, the statutory language requires that the violation be "willful," which "'occurs when the party committing the violation knew or should have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01220-MWC-ADS                      Date: October 2, 2025

Title:       Malachi Mickelonis *et al.* v. Aspyr Media

known that [its] conduct was a violation of'" SCUTPA.  *State ex rel. Medlock v. Nest Egg
Soc'y Today, Inc.*, 290 S.C. 124, 128 (S.C. Ct. App. 1986) (quoting St. S.C. § 39-5-110).

Defendant's argument under South Carolina law prevails only because there is no
Plaintiff to whom this law would apply.  Defendant points out that Mr. Hilliard, the sole
South Carolina plaintiff, states that he purchased the game on April 30, 2022.  *See D. MSJ*
22; Dkt. # 79-9, Ex. A.  Plaintiffs offer no response, *see generally P. Opp. MSJ*, and do not
dispute that Defendant did not release the game for purchase until after April 30, 2022.
Without any indication that Mr. Hilliard purchased the game when the game was actually
available for purchase, the Court cannot find a genuine dispute of material fact as to the
South Carolina claim and must grant summary judgment accordingly.

     *iv.*    *Colorado*

Defendant argues that Colorado requires actual knowledge or intent existing at the
time of the advertising conduct, not just constructive knowledge.  *D. MSJ* 22.  It avows that
because the two Colorado Plaintiffs purchased KOTOR II on June 7 and June 9, 2022,
which was before Lucasfilm expressed any concerns about the Mod's release, Defendant's
actions could not possibly have been knowing or intentional.  *Id.*  Plaintiffs dispute that the
Colorado Consumer Protection Act requires such a standard.  *See P. Opp. MSJ* 14.

The CCPA requires a showing of knowledge.  The Colorado Supreme Court has
explained that "[a] CCPA claim will only lie if the plaintiff can show the defendant
knowingly engaged in a deceptive trade practice."  *Crowe v. Tull*, 126 P.3d 196, 204 (Colo.
2006) (citation omitted).  "The CCPA provides an absolute defense to a misrepresentation
caused by negligence or honest mistake," meaning that liability "is dependent upon
knowledge or intent existing at the time of the advertising conduct and the remediable
damage that results from that conduct."  *Id.* (internal quotation marks and citation omitted).

Plaintiffs have provided sufficient evidence to create a genuine dispute of material
fact as to Defendant's knowledge.  As outlined above, Defendant's advertisement
suggested to the public that the DLC would be released, when (according to Plaintiffs)
Defendant had yet to receive final approval to release the DLC.  Viewing the evidence in
the light most favorable to Plaintiffs, a reasonable jury could find that Defendant knew that
the DLC would not be "Coming Soon," or perhaps at all.  *Cf. Warner v. Ford Motor Co.*,
No. 06-cv-02443-JLK-MEH, 2008 WL 4452338, at \*16 (D. Colo. Sept. 30, 2008) (finding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:      Malachi Mickelonis *et al.* v. Aspyr Media

that plaintiff survived summary judgment on CCPA claim where it presented evidence that defendant knew there was a better mechanism to ensure safety and did not utilize it, despite defendant contending that it lacked such knowledge). Accordingly, the Court cannot grant summary judgment on Plaintiffs' Oregon claim on these grounds.

      E.      Reliance on Defendant's Advertisements

Defendant's next argument is that "[a] Plaintiff that did not view or rely on marketing materials prior to his purchase does not have standing to assert claims." *D. MSJ* 23 (citation omitted). It avows that because Plaintiffs were not sufficiently specific in identifying the advertisements on which they relied, Plaintiffs are not entitled to present their claim. *Id.*

Defendant is correct that Plaintiffs must have relied on Defendant's marketing materials in order to maintain a claim. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007); *Hunter v. FCA US LLC*, No. 22-cv-06777-HSG, 2023 WL 4828013, at *5 (N.D. Cal. July 27, 2023). However, Plaintiffs' declarations that they saw Defendant's marketing materials, *see* Dkt. # 79-1–18, are sufficient to create a genuine dispute of material fact as to whether they actually saw these advertisements, *see In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1020–21 (N.D. Cal. 2013) (finding that individual's declaration stating that she visited an Apple store and received allegedly false guidance from a store employee was sufficient to create genuine dispute of material fact); *see also Tallman v. Miller*, No. 2:23-cv-1592-HL, 2025 WL 444280 at *2 (D. Or. Feb. 10, 2025) ("Conflicting declarations by themselves, however, are sufficient to create a genuine dispute of material fact.").

Later in its brief, Defendant identifies that Oregon, Colorado, California, Florida, Georgia, and Nevada all require proof of reliance. *D. MSJ* 24. It then argues that "[i]f the Court allows Plaintiffs in all states to proceed—each of whom purchased KOTOR II for different reasons—then Aspyr is entitled to summary judgment for all Plaintiffs who did not rely on the advertisements." *Id.* But Defendant does not identify any plaintiff that purportedly did not rely on Defendant's marketing materials, *see generally D. MSJ*; *D. MSJ Reply*, and Plaintiffs declare that they saw and relied on those materials, *see* Dkt. # 79-1–18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:      Malachi Mickelonis *et al.* v. Aspyr Media

As such, the Court cannot grant Defendant's motion for summary judgment based on Defendant's arguments related to Plaintiffs' viewing of or reliance on Defendant's marketing materials.

F.      Notice

Defendant initially avowed that the Georgia and Texas Plaintiffs did not provide the requisite written notice, which Defendant believed was fatal to Plaintiffs' claims.  *D. MSJ* 23–24.  Plaintiffs identified an exception in the Georgia statute that exempted Plaintiffs from the notice requirement under Georgia law, *see P. Opp. MSJ* 15–16, and Defendant conceded that the exemption applied and abandoned its Georgia argument accordingly, *see D. MSJ Reply* 7–8.

Regarding the Texas statute, Plaintiffs argue that they would only be required to provide notice where they seek damages, though they also highlight that they sent Defendant "correction notices" in July 2023.  *See P. MSJ Opp.* 16.  Because Plaintiffs seek both damages and injunctive relief under Texas law, the question of notice remains pertinent.  Defendant is correct that "[b]efore filing a DTPA claim for damages against any person . . . consumers seeking to pursue the claim must provide 'written notice to the person at least 60 days before filing the suit.'"  *In re Volkswagen "Clean Diesel" Mtkg., Sales Pracs., and Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 922 (N.D. Cal. 2018) (quoting Tex. Bus. & Com. Code § 17.505(a)).  This provision of the DTPA requires that the notice "advis[e] the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant."  Tex. Bus. & Com. Code § 17.505(a).  Plaintiffs point to Exhibit A filed alongside the Second Amended Complaint, *see* Dkt. # 45, Ex. A, but this letter falls short for several reasons.  First, the notice letter mentions only the California CLRA and the California FAL, not the Texas DTPA.  *See id.*  Assuming *arguendo* that the statute does not require specific mention of the Texas statute, Plaintiffs did not specify the amount of damages it sought in any respect.  Rather, the letter lists only the categories of damages that it may recover under the CLRA.  *See id.*  By the plain language of the statute, *see* Tex. Bus. & Com. Code § 17.505(a), this letter falls short.  Accordingly, the Court must grant summary judgment with respect to the claim for damages under the Texas DTPA, though not the claim for injunctive relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:23-cv-01220-MWC-ADS                    Date: October 2, 2025

Title:     Malachi Mickelonis *et al.* v. Aspyr Media

---

IV.    Plaintiff's Motion for Partial Summary Judgment

Plaintiffs' motion for partial summary judgment focuses on the falsity aspect of its claims. *See generally P. MPSJ.* They argue that Defendant promised to release the DLC but failed to do so, and members of the public were "likely to be deceived" by its representation. *See id.* 3. Though Defendant takes issue with Plaintiffs' lack of state-by-state analysis, Plaintiffs maintain that Defendant's promise to release the DLC was false in every state because it was "patently false." *P. MPSJ Reply* 9.

"The sufficiency of false advertising claims under the CLRA, FAL, and fraudulent and unfair prongs of the UCL are governed by the 'reasonable consumer' test." *See Houser v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC,* No. 21-cv-09390-JST, 2023 WL 7284160, at *2 (N.D. Cal. Nov. 3, 2023) (citing *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008)). Under this test, Plaintiffs must show that "members of the public are likely to be deceived." *Williams,* 552 F.3d at 938 (quoting *Friedman v. AARP, Inc.,* 855 F.3d 1047, 1055 (9th Cir. 2017)). The reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Proctor & Gamble Co.,* 105 Cal. App. 4th 496, 508 (2003).

Under the CLRA, FAL, and UCL, Plaintiffs are not entitled to summary judgment at this juncture. Viewing the evidence in the light most favorable to Defendant, Plaintiffs have not offered sufficient evidence to show that they were reasonable consumers rather than consumers with specialized knowledge. *See Whiteside,* 108 F.4th at 777–78. Beyond selected tweets and their own declarations, there is no evidence as to which individuals the marketing materials would mislead, or if the materials would mislead the "reasonable consumer." As Plaintiffs bear the burden of establishing that there is no genuine dispute of material fact, *see Celotex,* 477 U.S. at 323, the deficiency of their evidence precludes summary judgment.

As to several of the other states' statutes in question, Plaintiffs' shortcomings in proving that they represent the average or reasonable consumer are dispositive. *See Madsen v. W. Am. Mortg. Co.,* 143 Ariz. 614, 618 (Ariz. Ct. App. 1985) (stating that the Consumer Fraud Act test of what is "reasonably implied" is whether "the least sophisticated reader would be misled"); *State v. Living Essentials, LLC,* 8 Wash. App. 2d 1, 16 (2019) ("An act is deceptive if it is likely to mislead a reasonable consumer" (internal

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:23-cv-01220-MWC-ADS                        Date: October 2, 2025

Title:      Malachi Mickelonis *et al.* v. Aspyr Media

quotation marks and citation omitted)); *Waste Pro USA v. Vision Constr. ENT, Inc.*, 282 So.3d 911, 918 (Fla. Dist. Ct. App. 2019) (recognizing that to show a deceptive act under Florida law, the plaintiff must show that the practice "was likely to deceive a consumer acting reasonably in the same circumstances" (internal quotation marks and citation omitted)); *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 115 (N.J. Super. Ct. App. Div. 2005) (noting that under the New Jersey Consumer Fraud Act, the business practice must victimize the average consumer); *Daugherty v. Jacobs*, 187 S.W.3d 607, 614 (Tex. App. 2006) ("Generally, an act is false, misleading, or deceptive if it has the capacity to deceive an average or ordinary person . . . ." (citation omitted)).

For any other states' claims that remain, Plaintiffs have also not met their burden of production to show that the statements were false at the time that Defendant made them. Defendant represented that the DLC was "Coming Soon" as of May and June 2022—based on the progress that had already been made in obtaining approvals to release the DLC, including its receipt of approval from the "Mod leaders," a reasonable jury could find this statement to be true.

Accordingly, the Court cannot grant Plaintiffs summary judgment on the question of falsity.

V.      Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment only with respect to the South Carolina claim and the claim for damages under Texas law but **DENIES** Defendant's motion for summary judgment in all other respects.[5] The Court also **DENIES** Plaintiffs' motion for partial summary judgment.  The October 3, 2025, hearing is **VACATED**.

**IT IS SO ORDERED.**

                                                                                        :

**Initials of Preparer**     TJ

---

[5] Defendant raises arguments with respect to Plaintiffs' claim under Illinois law and the claims of David Kirkland.  As Plaintiffs agree, *see P. Opp. MSJ* 16, neither of those claims remain.